1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR VALLEY FAMILY RESOURCE CENTER *et al.*, | Case No. ED CV 16-00903-AB (SPx) |
| Plaintiffs, | |
| vs. | **ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)** |
| CITY OF HESPERIA *et al.*, | |
| Defendants. | |

1    Before the Court is Plaintiffs Victor Valley Family Resource Center

2    ("VVFRC"), Sharon Green, Daniel Avila, Harold Batts, Chris Dowdy, David Deen,

3    Nicholas Holt-Francis, and Renee Gullett's (collectively "Plaintiffs") Motion for a

4    Preliminary Injunction ("Motion") seeking to enjoin Defendants City of Hesperia

5    ("City"), John McMahon, and Ernesto Montes, and their officials, agents, and

6    employees, from enforcing Hesperia Ordinance 2007-07 and Hesperia Ordinance

7    2015-12 against Plaintiffs, or the properties where they reside or carry out their

8    mission, on the grounds that Plaintiffs face the threat of immediate eviction due to

9    the City's enforcement efforts.  Dkt. No. 36.  Defendants City of Hesperia and

10   Ernesto Montes (collectively "Defendants") timely filed their Opposition to the

11   Motion on June 21, 2016.  Dkt. No. 46.[1]  No Opposition was filed by Defendant

12   John McMahon.  Plaintiffs timely filed their Reply in support of the Motion on June

13   23, 2016.  Dkt. No. 47.

14       Plaintiffs previously filed an *ex parte* application for a temporary restraining

15   order ("TRO") against defendants requesting the same relief.  Dkt. No. 11.  On May

16   20, 2016, the Court denied Plaintiffs' *ex parte* application, ruling that Plaintiffs

17   failed to demonstrate that they will suffer immediate and irreparable harm such that

18   a TRO was warranted.  Dkt. No. 25.  Since that time, the landlords of the properties

19   where Plaintiffs reside have filed unlawful detainer actions, thereby taking further

20   steps towards evicting Plaintiffs.

21       For the following reasons, the Court **GRANTS** Plaintiffs' Motion for a

22   Preliminary injunction.

23

24

25

26

27   ────────────

[1] On June 17, 2016, the Court granted Plaintiffs' *ex parte* application for an order
28   shortening time and ordered the briefing schedule on Plaintiffs' Motion as follows: Defendants'
Opposition is due June 21, 2016 and Plaintiffs' Reply is due June 23, 2016.  Dkt. No. 45.

1

# I.     FACTUAL BACKGROUND[2]

## A.     The Ordinances

This case arises from the City's enactment of two ordinances – Ordinance No. 2007-07 ("Group Home Ordinance"), enacted in 2007 and codified in Hesperia Municipal Code Section 16.16.072, and Ordinance 2015-12 ("Rental Housing Ordinance") (collectively the "Ordinances"), enacted in 2015 and codified in Hesperia Municipal Code Chapter 8.2.

The Group Home Ordinance provides that in a district zoned R-1, unlicensed group homes (defined as "any residential structure or unit, whether operated by an individual for profit or non-profit entity, which is not licensed by the State of California and which houses individuals not related by blood or marriage") are permitted to operate "subject to approval of a Conditional use permit."  Section 4, Subsection C of the Ordinance explicitly prohibits "Group Homes of two (2) or more unrelated sex offenders and/or two (2) or more individuals on probation. . . ."  And Section 4, Subsection D further provides that a Conditional use permit is required for the new establishment of any Group Homes "that are not prohibited under subsection C. above . . . ."

The Rental Housing Ordinance requires that all landlords renting or leasing a residential rental property in the City must register with the City and thereby participate in the Ordinance's "Crime Free Rental Housing Program."  As part of the program, Section 8.20.050(B) requires each landlord to provide the Chief of Police with identifying information for all potential renters of their property, whom the Chief of Police will then screen to "determine if the potential adult Tenants have been in violation of a Crime Free agreement or rules at previous locations."  The Chief of Police is then directed to provide this information to the landlord "to take

---

[2]   The factual background of this case was set forth in the Court's May 20, 2016 order. Dkt. No. 25.  Those facts are incorporated herein by reference. The Court repeats background facts only as necessary for a decision on this Motion.

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

actions that he or she determines to be legally appropriate."  Section 8.20.050(C) also requires all landlords to include a "Crime Free Lease Addendum" in every lease agreement with a tenant, wherein the tenant agrees not to "engage in criminal activity that would violate any federal, state or local law, on or near property premises," agrees that a violation of this addendum is a material violation of the lease and provides good cause for termination of the lease, and agrees that failure to comply with the addendum is a "material non-curable breach of the lease" that "will result in a Three Day Notice to Quit" served on the tenant that will require the tenant to vacate the property within three days.  Section 8.20.050(C) also provides:

> When an Owner or their designee is notified by the Chief of Police, or his or her designee, that a Tenant has engaged in criminal activity that would violate any federal, state or local law, on or near the Residential Rental Property leased to Tenant, the Owner shall begin the eviction process against the Tenant within 10 business days of the date of such notice, and pursuant to the Crime Free Lease Addendum.

"When allowed by law," the Chief of Police's notice to the landlord "shall provide a report or incident number, identify the offending Tenant(s), unit number if applicable, and the specific violation(s), and shall state the date(s) and time(s) of any observed criminal activity and any resulting arrest(s)" and "at the Chief of Police's discretion," the notice may also include "the evidence and documents used by the Chief of Police to determine whether a Tenant has engaged in criminal activity as contemplated herein."  Finally, section 8.20.110 of the Rental Housing Ordinance provides that landlords who fail to comply with the provisions of the Ordinance

3

1  "may be subject to an administrative citation in accordance with this Code or any

2  other action authorized by law to enforce the provisions of this Chapter."

3  **B.   City Enforcement Efforts**

4        Plaintiff VVFRC, founded and led by CEO Plaintiff Sharon Green, rents and

5  operates three residential homes in the City of Hesperia for its clients, who are

6  individuals on probation facing homelessness or other transitional issues as a result

7  of prior incarceration.   Plaintiffs Avila, Batts, Dowdy, Deen, Holt-Francis, and

8  Gullett are current clients of VVFRC receiving such services.   The three VVFRC

9  houses, each owned by different landlords, are located on 13211 La Crescenta Street

10 ("La Crescenta House"), 13147 Hollister Street ("Hollister House"), and 9046

11 Azalea Springs Avenue ("Azalea House").

12       In the last few weeks, Plaintiffs contend that threats to their homes have

13 intensified.  Mot. at 3.  On May 31, 2016, the landlord of the La Crescenta House re-

14 filed an unlawful detainer action ("UD action") against VVFCR.[3]  Declaration of

15 Sharon Green in support of Pls.' Motion ("Green Decl.") ¶ 2, Ex. A, Dkt. 34-1. The

16 3-day Notice to Quit contends that VVFCR breached the rental agreement by

17 "operating the rental premise without a conditional use permit from the City of

18 Hesperia" and failing to "obtain[] a business license from the City of Hesperia."  *Id.*

19 The Notice to Quit also attached a copy of the City's January 13, 2016 letter, which

20 advised the landlord of alleged "ongoing criminal activity at this location" in

21 accordance with the Rental Housing Ordinance, as further grounds for the action

22 being taken.  *Id.*  On June 10, 2016, VVFCR filed its Answer.  *Id.* ¶ 3, Dkt. 34.

23       On June 14, 2016, the landlords of the Hollister House and the Azalea House

24 filed UD actions against VVFCR.  Reply Declaration of Sharon Green in support of

25 Pls.' Motion ("Reply Green Decl.") ¶¶ 2 - 3, Exs. A - B, Dkts. 44-1 – 44-2.  In both

26 UD actions, the 3-day Notice of Quit contends that VVFCR violated the rental

27

28       [3]  In August, 2015, the landlord of the La Crescenta House filed an unlawful detainer action
against VVFRC, which was dismissed that same month.

4

agreement by failing to comply with a "law or ordinance." *Id.* The Notice to Quit in the Hollister House UD action attached a copy of an Administrative Citation from the City, dated May 26, 2016, citing the landlord for violation of Hesperia Municipal Code sections 5.040.030 ("Operating Without A Business License") and 16.16.040 ("Violation of City Land Use Laws"), as grounds for the action being taken. *Id.*, Ex. A. The Notice to Quit in the Azalea House UD action attached a similar citation, dated May 20, 2016. *Id.*, Ex. B.

## II.   **LEGAL STANDARD**

"A preliminary injunction is an extraordinary and drastic remedy." *Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1124 (9th Cir.2014) (quoting *Munaf v. Geren,* 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of hardships tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 877 (9th Cir.2009). The *Winter* factors are considered in conjunction with the Ninth Circuit's "sliding scale" approach, which provides that "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Vanguard Outdoor, LLC v. City of Los Angeles,* 648 F.3d 737, 739 (9th Cir.2011).

"In one version of the 'sliding scale,' a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's favor." *Id.* at 740 (internal quotation marks omitted; brackets in original) (noting that the "serious questions" test survives *Winter*). Therefore, "serious questions going to the merits and a hardship balance that tips sharply in the plaintiff's favor can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury

5

and that the injunction is in the public interest."  *Id.* (internal quotation marks omitted).

## III.   **DISCUSSION**

### A.   **Likelihood of Success on the Merits**

Plaintiffs contend the "facts and law presented" establish "a strong likelihood" that Plaintiffs will ultimately succeed on the merits."  Mot. at 12.  Plaintiffs challenge the constitutionality of the Ordinances, facially and as-applied to Plaintiffs, alleging violations under the: 1) California constitution (privacy and association claims); 2) Fourteenth Amendment equal protection clause; and 3) Fourteenth Amendment due process clause.[4]  *Id.* at 12 – 24.  Defendants disagree, contending the majority of Plaintiffs' claims are barred by the applicable statute of limitations, and as to the remaining challenges, Plaintiffs fail to allege "a constitutional violation visited pursuant to a custom, practice or policy of the local government."  Opp. at 6 – 10.  Defendants further argue the Rental Housing Ordinance passes rational basis scrutiny and provides sufficient process.  *Id.* at 9.  The Court finds Plaintiffs have raised serious questions regarding the constitutionality of the Ordinances under federal law, weighing in favor of granting a preliminary injunction.[5]

### 1.   **Statute of Limitations**

As a threshold matter, the Court examines whether Plaintiffs' federal claims are barred by the applicable statute of limitations.  Defendants concede that Plaintiffs' as-applied challenge to the Group Home Ordinance, and Plaintiffs' facial

---

[4]  Plaintiffs' Complaint also asserts claims for violation of the "right to travel, to Move Freely, and to be Free from Banishment," violation of the Fourth Amendment (unlawful search and seizure), and state preemption claims, but Plaintiffs do not discuss these claims in their Motion.  Dkt. 1 (Complaint); Mot. at 12 n.10.

[5]  Because the Court finds Plaintiffs are entitled to the requested relief based on certain federal claims, the Court does not address the merits of the other claims.  *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000) (finding likelihood of success on the merits "based on its trespass claim, the court does not address the merits of the remaining claims. . . .").

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

and as-applied challenge to the Rental Housing Ordinance remain "potentially viable." Opp. at 8. Thus, the Court examines only whether Plaintiffs' facial challenge to the Group Home Ordinance is time-barred.

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, [courts] look to the statute of limitations for personal injury actions in the forum state." *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Both parties agree that under California law, the statute of limitations for a personal injury action is two years. Opp. at 6; Reply at 7. The issue is when a Section 1983 claim begins to accrue. Defendants contend Plaintiffs' facial challenge accrued upon adoption of the Group Home Ordinance in 2007 so that the "statute of limitations under federal law expired in 2009." Opp. at 6. Plaintiffs contend that the statute of limitations begins to run when a "plaintiff knows or has reason to know of the asserted injury." Reply at 7. Because the City did not begin enforcement of the Group Home Ordinance against Plaintiffs until January, 2015, Plaintiffs claim their facial challenge does not expire until January, 2017. *Id.* The Court agrees with Plaintiffs.

"A statute of limitations under § 1983. . . begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (finding the city's decision to send a formal "Notice of Abatement of Public Nuisance" pursuant to the city's ordinance triggered the § 1983 statute of limitations). Here, the City's first "Notice of Violation" to VVFRC under the Group Home Ordinance is dated, February 17, 2015. Declaration of Sharon Green in support of Pls.' App. ("Green Decl. App.") ¶ 9, Ex. C, Dkt. 12-6. Plaintiffs commenced this action on May 4, 2016, within two years of receiving the first notice for an alleged violation of the Ordinance. Dkt. 1. Accordingly, Plaintiffs' facial challenge to the Group Home Ordinance is timely.

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

1

2.        **Group Home Ordinance**

2     "The Equal Protection Clause of the Fourteenth Amendment commands that

3     no State shall 'deny to any person within its jurisdiction the equal protection of the

4     laws,' which is essentially a direction that all persons similarly situated should be

5     treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439,

6     105 S. Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted).  Plaintiffs contend the

7     Group Home Ordinance violates the Equal Protection Clause because it "plainly

8     discriminates against persons on probation."[6]  Mot. at 22.  In support, Plaintiffs cite

9     to *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), where

10    the Supreme Court struck down an amendment to the Colorado state constitution

11    which was designed to repeal all existing laws barring discrimination based on

12    sexual orientation on the grounds that "it [was] born of animosity toward the class

13    that it affects" and "cannot be said to be directed to an identifiable legitimate

14    purpose or discrete objective."  *Romer*, 517 U.S. at 621.  In doing so, the Supreme

15    Court recognized that a "legislative classification" that neither "burdens a

16    fundamental right nor targets a suspect class" must "bear a rational relationship to an

17    independent and legitimate end" in order to "ensure that classifications are not

18    drawn for the purpose of disadvantaging the group burdened by the law."  *Id.* at 621,

19    633.  Plaintiffs contend that, similar to "the law struck down in *Romer*," the Group

20    Home Ordinance "is based on discriminatory animus against persons on probation"

21    which is not connected to "any legitimate public safety concerns."  Mot. at 23 – 24.

22    Defendants do not address Plaintiffs' contentions in their brief.

23        The Court is persuaded by Plaintiffs' arguments.  The Group Home Ordinance

24    states that it was enacted because of the "substantial possibility" that a "proliferation

25    of group homes, housing parolees and sex offenders in the City, have the potential to

26    change the character of the residential neighborhoods" and "create concerns for the

27

28    _____
      [6] The Ordinance defines "probation" as "an individual serving a period of time on
      probation ordered by a court of law."  Wong Decl. ¶ 16, Ex. A.

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

safety and welfare of residents."  Declaration of Adrienna Wong in support of Pls.'
App. ("Wong Decl.") ¶ 16, Ex. A, Dkt. 12-9.  The Ordinance further states that the
City considered "studies, reports, data and information detailing the need for this
Ordinance" which is attached as Exhibit "A" to the Ordinance.  *Id.*  Plaintiffs have
provided the Court with a copy of a "staff report," the "minutes of the Hesperia
Planning Commission's meeting on April 26, 2007," "Resolution No. PC-2007-35,"
"minutes of the Hesperia City Council's special joint meeting on January 17, 2007;"
and "minutes of the Hesperia's City Council's regular meeting on May 2, 2007"
related to the Ordinance; however, it is unclear if these documents were part of
Exhibit "A" to the Ordinance.  *Id.* ¶¶ 16 – 20, Exs. B – E.  Nevertheless, the
documents do not contain information evidencing that persons on probation have
posed a threat to the health, safety or welfare of its residents. [7]  Although the City's
public safety concerns are legitimate, without such proof, the Court has serious
questions whether there exists a legitimate public purpose for enacting the
Ordinance.  *See City of Cleburne, Tex.*, 473 U.S. at 450 (holding requiring a special
use permit for a proposed group home for the mentally retarded violated Equal
Protection Clause in the absence of any rational basis in the record for believing that
the group home would pose any special threat to the city's legitimate interests); *see
also Garrett v. City of Escondido*, 465 F.Supp.2d 1043, 1053 (S.D. Cal. 2006)
(granting TRO application when the City failed to provide support for its statement
that "illegal aliens" endangered the health, safety and welfare of its citizens).

---

[7]  The information provided, such as the staff report, suggests that the Ordinance was
enacted to regulate sex offenders and convicted felons from residing within the City, but there are
also no "studies, data and information" evidencing such persons "create concerns for the safety and
welfare of residents." Wong Decl., Ex. A. Moreover, VVFRC does not provide services for sex
offenders.  Compl. ¶ 43 ("if a prospective client's mental health is not manageable through
medication , or if the individual is a sex offender, the individual will not be placed in the VVFRC
program, but will instead be placed in a specific home through the San Bernardino County
Department of Behavioral Health or other entity.")

9

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

1

### 3.    Rental Housing Ordinance[8]

2   The Court also has serious questions regarding the due process considerations

3 under the Rental Housing Ordinance.  "The Fourteenth Amendment reads in part:

4 'nor shall any State deprive any person of life, liberty, or property, without due

5 process of law,' and protects 'the individual against arbitrary action of

6 government.'"  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60, 109 S.

7 Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989) (citation omitted).  Procedural due process

8 claims are examined under a two-part analysis. First, the court must determine

9 whether the interest at stake is a protected liberty or property right under the

10 Fourteenth Amendment.  *Id.* at 460.  Second, only after identifying such a right, the

11 court must consider whether "procedures attendant upon that deprivation were

12 constitutionally sufficient."  *Id.*

13   Here, "[t]he right to be heard prior to the deprivation of a property interest is a

14 fundamental protection of the Due Process clause."  *Garrett*, 465 F.Supp.2d at 1058

15 – 59 (recognizing tenant's due process rights); *see also Smith v. Brown*, No. C10-

16 1021, 2010 WL 3120203, at *2 (W.D. Wash. Aug. 9, 2010) (finding occupants of

17 group home had standing to challenge sale of property which effectively would

18 terminate their residency).  The Rental Housing Ordinance requires that when a

19 landlord is "notified by the Chief of Police, or his or her designee, that a Tenant has

20 engaged in criminal activity" the landlord "***shall*** begin the eviction process against

21 the Tenant ***within 10 business days*** of the date of such notice. . . ."  Wong Decl. ¶

22 21, Ex. F (emphasis added).  The Ordinance defines "Tenant" as "any person who

23

24

---

25  [8]   The City's contention that Plaintiffs have failed to present evidence of its enforcement of
26 the Rental Housing Ordinance against any of the Plaintiffs is without merit.  Opp. at 7.  The Court
previously addressed this issue in its May 20, 2016 order finding the City's January 13, 2016 letter,
27 which notified the La Crescenta landlord of criminal activity under the provisions of the Rental
Housing Ordinance, was "sufficient to require immediate eviction of VVFRC."  Dkt. 25.  The La
28 Crescenta landlord has since filed a UD action against VVFRC.  Green Decl., Ex. A.  Plaintiffs
have therefore shown a specific threat of harm that is more than merely speculative.

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

1    occupies a Residential Rental Property, whether as a Tenant or permittee of the
2    Owner." *Id.*

3         Plaintiffs contend that the Rental Housing Ordinance violates procedural due
4    process protections because it requires landlords to initiate eviction proceedings
5    against tenants, thereby interfering with the property rights of both the landlord and
6    tenant, without sufficient notice of the allegations against the tenant or a pre-
7    deprivation opportunity for the landlord or tenant to dispute the allegations.  Mot. at
8    15.  Defendants contend that "[a]dequate safeguards exist on the face of the
9    ordinance" but fail to specifically address any of the Court's concerns.  Opp. at 10.
10   Although the Ordinance states "[a]ny recipient of an administrative citation may
11   contest the citation by the procedures set forth in this Code," Defendants have not
12   provided the Court with a copy of the Code section discussing the alleged appeal
13   process.  Wong Decl., Ex. F.

14        The Court finds the Ordinance concerning because (1) it is unclear whether
15   there is a procedure available for the tenant to contest the findings of the City prior
16   to the initiation of eviction proceedings; and (2) 10 business days appears to be an
17   insufficient amount of time available to the tenant for notice and opportunity to be
18   heard.  *See Garrett*, 465 F. Supp.2d at 1058 - 59; *see also Cook v. City of Buena*
19   *Park*, 126 Cal.App.4th 1, 9 (2005) (the "onerous requirement that the landlord
20   institute the unlawful detainer action within just 10 days of receiving the notice form
21   the chief of police" is "not nearly enough time for the owner to bolster his evidence
22   if the City's notice is lacking or to otherwise investigate the matter and develop his
23   case").  Because the Ordinance lacks notice and a hearing to the tenant prior to the
24   initiation of unlawful detainer proceedings, the Court finds Plaintiffs have raised
25   serious questions regarding the constitutionality of the Rental Housing Ordinance.

26   **B.    Likelihood of Irreparable Harm**
27        "A wrongful eviction may give rise to irreparable injury, and in the Ninth
28   Circuit, 'it is well-established that the loss of an interest in real property constitutes

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

an irreparable injury.'"  *Johnson v. Macy*, No. CV 15-7165, 2015 WL 7351538, at *8 (C.D. Cal. Nov. 16, 2015) (quoting *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011)); *see also Jackmon v. America's Servicing Co*., No. 11-03884, 2011 WL 3667478, at *3 (N.D. Cal. Aug. 22, 2011) ("It is undisputed that plaintiffs are harmed if they are evicted from their homes or undergo a foreclosure sale.").  "[T]he person or entity seeking injunctive relief must demonstrate that irreparable injury is *likely* in the absence of an injunction.  An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury."  *Park Village Apartment Tenants Ass'n*, 636 F.3d at 1160 (internal quotations marks and citation omitted).

Here, it is undisputed that unlawful detainer actions have been filed against VVFRC in connection with the La Crescenta House, the Hollister House and the Azalea House.  Green Decl. ¶ 2, Ex. A; Reply Green Decl. ¶¶ 2-3, Exs. A - B.  Plaintiffs have also established that the challenged Ordinances are the driving force behind the unlawful detainer actions.  The 3-day Notice to Quit in all three actions make clear that VVFRC has allegedly breached its rental agreement by failing to comply with a law or ordinance.  *Id.*  With the threat of eviction imminent, the Court finds Plaintiffs have demonstrated they will suffer irreparable harm.  *See Smith*, 2010 WL 3120203, at *6 (finding irreparable harm when occupants of group home "will no longer be able to live at the home of their choosing").[9]

### C.   Balance of Hardships

In balancing the equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter,* 555 U.S. at 24 (citation omitted).  If the preliminary

---

[9]  Defendants' argument that Plaintiffs must present evidence of a "judgment of eviction" is unavailing.  Opp. at 4.  The Ninth Circuit recognized that "Defendants' *threat* to evict Plaintiffs created a likelihood of irreparable harm. . . ."  *Park Village Apartment Tenants Ass'n*, 636 F.3d at 1159 (emphasis added).

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)

injunction is not granted, Plaintiffs contend they "will imminently be displaced and rendered homeless." Mot. at 10. In response, Defendants contend a preliminary injunction would invade the City's "fundamental powers" by preventing it from enforcing the Ordinances and protecting the "public health, safety and welfare of its residents." Opp. at 6. Defendants are further concerned that VVFRC will open new houses, thereby "exacerbating the nuisance uses in the community." *Id.*

The Court finds the harm caused to Plaintiffs if the Ordinances are not enjoined outweigh the harm to Defendants. Plaintiffs attest that without housing assistance from VVFRC, they will be homeless. Declaration of Daniel Avila ¶ 2, Dkt. 12-1 ("If I were forced to leave this house, I would be back on the streets, like I was before."); Declaration of Renee Gullett ¶ 4, Dkt. 12-7 ("If I could not live in this house, I might be living on the streets."); Declaration of Nicholas Holt-Francis ¶ 6, Dkt. 12-8 ("If I were forced to leave the house where I live now, I would go back to the street again."); Declaration of Chris Dowdy ¶ 2, Dkt. 12-4 ("Without the housing I have now, I would be homeless."); Declaration of Harold Batts ¶ 7, Dkt. 12-2 ("If I did not have this housing, I would become homeless."); and Declaration of David Deen ¶ 3, Dkt. 12-3 (". . . I would have been on the street if I had not been referred to housing through Victor Valley Family Resource Center."). Thus, the harm that Plaintiffs will suffer if they are wrongfully evicted from their homes is irreparable. *See Johnson*, 2015 WL 7351538, at *8 ("[W]rongful eviction is not an injury for which remedies available at law are adequate."); *see also Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) ("Despite the hardships the City may face in delaying some of its development plans and providing relocation benefits, we agree with the district court that it is a far more severe hardship for someone to be displaced from his or her home").

Defendants, on the other hand, have failed to identify an actual prejudice they will suffer if the preliminary injunction is granted. *Jones v. Upland Hous. Auth.*, No. 12-02074, 2013 WL 708540, at *16 (C.D. Cal. Feb. 21, 2013) ("The hardship to

1    Plaintiffs—imminent homelessness—tips the balance of equities in their favor, in

2    light of the essentially absent hardship faced by Defendants.").  A preliminary

3    injunction will not prevent Defendants from enforcement of any criminal laws, nor

4    have Defendants provided any evidence of any criminal activity occurring at any of

5    the locations.  *See Garrett*, 465 F.Supp.2d at 1053 (finding balance of hardships tip

6    in favor of plaintiffs when ordinance will not affect overall levels of criminal

7    activity).  Thus, the balance of hardship tips in Plaintiffs' favor.

8         **D.    Public Interest**

9         When an injunction would affect the public, the court must examine whether

10   the public interest would be advanced or impaired by the issuance of a preliminary

11   injunction.  *Caribbean Marine Services Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th

12   Cir. 1988).  Plaintiffs contend that the public interest favors a preliminary injunction

13   because the services provided by VVFRC "enhance public safety and prevent crime

14   by providing housing and support to people in reentry."  Mot. at 11.  VVFRC

15   provides "meals, financial literacy classes, anger management training, and case

16   management services to homeless individuals and persons in reentry to help them

17   find permanent employment and housing."  Green Decl. App. ¶ 3.[10]  VVFRC

18   currently holds a contract with the County of San Bernardino to provide transitional

19   housing and supportive services to individuals on probation.  *Id.* ¶ 5, Ex. B.

20        Defendants agree that an important "public interest exists in addressing

21   conditions that impact the disadvantaged" but contend that VVFRC's services

22   violate "basic life safety standards via overcrowding" and therefore impact

23   "legitimate public health, safety and welfare interests."  Opp. at 10 - 11.  According

24   to Defendants, Plaintiffs allege they serve up to 80 individuals a year, which means

25   there is a "range of 13-26 occupants per house" which is in violation of the Uniform

26   Building Code.  *Id.* at 11.  However, Defendants have made no showing that

27    

28       [10]  According to Plaintiffs, approximately 85% of its clients who graduate from the
     transitional supportive housing program remain employed and/or enrolled in school and have
     permanent housing.  Compl. ¶ 45, Dkt. 1.

1    VVFRC has violated any basic housing standards.  Thus, the public interest factor

2    weighs in Plaintiffs' favor.

3              **E.    Bond**

4              Federal Rule of Civil Procedure 65 requires the posting of a security in an

5    "amount that the court considers proper to pay the costs and damages sustained by

6    any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P.

7    65(c).  Plaintiffs argue that a bond should be waived in this case.  Mot. at 24 n.21;

8    *see also People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning*

9    *Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985), *amended*, 775 F.2d 998 (9th Cir.

10   1985) ("The court has discretion to dispense with the security requirement, or to

11   request mere nominal security, where requiring security would effectively deny

12   access to judicial review.").  Defendants do not address the bond requirement in

13   their papers.  The Courts finds a nominal bond in the amount of $100.00 will be

14   sufficient.

15   **IV.   <u>CONCLUSION</u>**

16             For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion For a

17   Preliminary Injunction.  Defendants are enjoined from taking any action to enforce

18   either Hesperia Ordinance No. 2007-07 or Hesperia Ordinance 2015-12 against

19   Plaintiffs or the properties located at 9046 Azalea Springs Avenue, 13211 La

20   Crescenta Street, and 13147 Hollister Street.

21

22             **IT IS SO ORDERED.**

23

24   DATED: July 1, 2016           _____

25                                 HONORABLE ANDRÉ BIROTTE JR.

26                                 UNITED STATES DISTRICT COURT JUDGE

27

28

ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 36)